## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

KOREY JONES,

       Plaintiff,

v.

CARRI MORRIS, PAIGE SALGER,
MS. NICHOLSON, MS. CLAUSE, MR.
DAVISON, MS. CRISCO, DR.
JACKSON, MS. WINGER, DR. BOB
BLUM, MS. C. REGELSPERGER,
AMANDA CHOATE, DR. BABICH, DR.
DEVENNEY, NURSE RACHEL, and
WEXFORD HEALTH SOURCES, INC.,

       Defendants.

Case No. 25-cv-2089-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Korey Jones, who at the time he filed his Complaint was an inmate of the Illinois Department of Corrections incarcerated at Menard Correctional Center,[1] brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Jones alleges that he was denied his medications for his mental health conditions and chronic pain, despite repeated requests for his prescribed medications.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

---

[1] Jones has since been released from custody (Doc. 14).

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Jones alleges that when he initially transferred to Menard he was housed in restrictive housing (Doc. 1, p. 9). He does not indicate the date of his transfer. While being processed by staff at Menard, he informed them of the medications he took for his depression and bipolar disorder, including lithium and Remeron (*Id*.). He also informed them that he took pain medications for a bullet that was still lodged behind his left knee, as well as gabapentin for nerve damage to the same knee (*Id*.).

Jones alleges that he spoke to numerous staff about his need to have his prescriptions filled at Menard. He spoke to mental health worker Paige Salger on many occasions about his need for his medications (Doc. 1, p. 9). She acknowledged his need but noted that the prison was understaffed (*Id*.). He spoke to Ms. Nicholson every week when she walked through the gallery and told her about his diagnosis and medications, but she informed Jones that she was unable to help him (*Id*. at p. 10). He also informed Ms. Clause, Ms. Crisco, and Ms. Winger when they walked the gallery, but they merely stated that they were unable to help (*Id*. at pp. 10-11).

Jones alleges that he had appointments with Dr. Davison and informed him that he had started to self-harm and play with his feces (Doc. 1, p. 10). Davison informed him that he was new to the prison, and he believed Jones was trying to demand specific medications (*Id*.). He stated he would document Jones's concerns (*Id*.).

2

In February or March 2025, Jones saw Dr. Jackson (Doc. 1, p. 11). He informed her of his diagnosis, the medications that he took, and the name of the doctor who had previously prescribed the medications (*Id*.). At this point, Jones alleges he was without his medications for seven or eight months (*Id*.). Dr. Jackson told Jones that he did not look bipolar. When he questioned her about what a bipolar individual looked like, she threatened to place him on watch and ordered officers to remove him from her office (*Id*.).

On several occasions, Jones wrote to Dr. Bob Blum about his need for pain medications, but he never received a response (Doc. 1, p. 11). He also submitted sick call request slips. He wrote to Dr. Babich and Dr. Devenney about his pain and need for his prescribed medications, but he never saw them for care (*Id*. at p. 12). He also wrote to the head of mental health, Carri Morris, informing her of his conditions, medications, and pharmacy location, but she never wrote back to him (*Id*. at p. 14).

Jones attended several one-on-one appointments with C. Regelsperger and he informed her of his diagnosis and medications (Doc. 1, p. 12). She directed him to submit a grievance. He gave Amanda Choate a sick call about his pain medications, but she cursed at him and stated that he could obtain his medications when he was released (*Id*.). Nurse Rachel reviewed his outside medical records and apologized for being understaffed (*Id*.). She blamed Wexford Health Sources, Inc. for the understaffing and indicated that she was working to get Jones an appointment (*Id*.).

Jones blames Wexford and its understaffing of the healthcare unit for his inability to receive his medications (Doc. 1, p. 13). He alleges that Wexford failed to examine inmates like him with serious medical needs or provide proper care (*Id*.). Jones alleges

3

that he has yet to see a doctor at Menard due to the understaffing issues (*Id.*). He also alleges that Wexford is required to identify and correct incompetent treatment, but it failed to remedy Jones's issues with his medications (*Id.*). Jones notes that numerous nurses have stated that the reason he cannot see a doctor is due to understaffing.

Jones alleges that he went from August 21, 2024, until June 15, 2025, without his medication for his mental health conditions (Doc. 1, p. 13). At the time he filed his complaint, he still did not have medication for his pain and nerve damage (*Id.*).

<u>Discussion</u>

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Carri Morris, Paige Salger, Ms. Nicholson, Ms. Clause, Mr. Davison, Ms. Crisco, Dr. Jackson, Ms. Winger, Dr. Bob Blum, Ms. C. Regelsperger, Amanda Choate, Dr. Babich, Dr. Devenney, and Nurse Rachel for failing to provide Jones with his lithium, Remeron, gabapentin, and pain medications.**
>
> **Count 2:** **Eighth Amendment claim against Wexford Health Sources, Inc. for understaffing the healthcare unit as well as failing to correct staff's mistakes.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

4

dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

**Count 1**

To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately…indifferent" to that condition. *See Gileos v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendant's actions were more than negligent, something approaching intentional wrongdoing or recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Further, a plaintiff must demonstrate that each defendant has knowledge of his condition and was personally involved in his care. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("[l]iability depends on each defendant's knowledge and actions"). A successful complaint generally alleges "the who, what, when, where, and how…" *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

At this stage, Jones states a viable claim for deliberate indifference against Paige Salger, Ms. Nicholson, Ms. Clause, Mr. Davidson, Ms. Crisco, Dr. Jackson, Ms. Winger, C. Regelsperger, and Amanda Choate. He alleges that he spoke to these officials numerous times between August 21, 2025, and June 15, 2025, either as they made rounds through the gallery or during medical and mental health appointments, and informed

---

[2] This includes any claim against defendants in their official capacities. *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

them about his need for his prescriptions. Jones alleges that they each told him that they were unable to help him, or in the case of Dr. Jackson, told him that he didn't look bipolar. Some, like Jackson and Amanda Choate, cursed at or threatened him. Jones alleges that none of these officials acted to obtain his medications. At this stage, that is enough to state a claim.

As to Nurse Rachel, however, Jones fails to allege that she acted with deliberate indifference. He alleges that he spoke to Nurse Rachel and she acknowledged his issues and indicated that she was working to get Jones seen by a provider. There are no allegations that she ignored his request or denied him care. Her response that the prison was understaffed and she was working to get him an appointment does not rise to the level of deliberate indifference.

Jones also fails to state a claim against Dr. Bob Blum, Dr. Babich, Dr. Devenney, and Carri Morris. Jones alleges that he wrote to these individuals about his need for medication, but he fails to provide pertinent information about these interactions. Jones fails to allege when he wrote to each provider, the contents of those letters, and whether they received the letters. He alleges that Paige Salger informed him that Morris indicated they were months behind, but he fails to allege when this conversation took place. Nor is there any indication that Morris was aware of his need for his specific medications. Jones fails to adequately allege that these providers were aware of his conditions and his need for medications. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known"). Thus, Count 1 shall proceed against

Paige Salger, Ms. Nicholson, Ms. Clause, Mr. Davidson, Ms. Crisco, Dr. Jackson, Ms. Winger, C. Regelsperger, and Amanda Choate, but is **DISMISSED without prejudice** as to Nurse Rachel, Dr. Bob Blum, Dr. Babich, Dr. Devenney, and Carri Morris.

**Count 2**

Turning to Jones's claim in Count 2, Wexford can only be liable for deliberate indifference if it had a policy or practice that caused the constitutional violation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Here, Jones alleges that he was denied care due to the understaffing of the healthcare unit by Wexford. Jones alleges that numerous medical staff told him that he could not see a doctor to obtain his medications because of the understaffing by Wexford. Thus, Jones states a viable claim against Wexford for its practice of understaffing the healthcare unit at Menard. But to the extent that Jones alleges Wexford hired incompetent staff or failed to correct staff, he fails to state a claim. Wexford cannot be liable for the actions of its employees because there is no supervisory liability under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

## Motion for Counsel

In addition to his Complaint, Jones filed a motion for counsel (Doc. 2). Jones notes that he wrote several attorneys, but no one were willing to take his case. Jones notes that he only has a grade school education and suffers from mental health issues. But given the early stages of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil

the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[3] There is nothing currently pending that would require counsel. Once Defendants have filed their Answers, the Court will enter a scheduling order explaining the next steps in the litigation process. If Jones continues to experience difficulties in litigating his case at that time, he may resubmit his request for counsel. At this time, counsel is not needed, and his motion is **DENIED**.

<u>**Disposition**</u>

For the reasons stated above, Count 1 shall proceed against Paige Salger, Ms. Nicholson, Ms. Clause, Mr. Davidson, Ms. Crisco, Dr. Jackson, Ms. Winger, C. Regelsperger, and Amanda Choate, but is **DISMISSED without prejudice** as to Nurse Rachel, Dr. Bob Blum, Dr. Babich, Dr. Devenney, and Carri Morris. Count 2 shall proceed against Wexford Health Sources, Inc.

The Clerk of Court shall prepare for Paige Salger, Ms. Nicholson, Ms. Clause, Mr. Davidson, Ms. Crisco, Dr. Jackson, Ms. Winger, C. Regelsperger, Amanda Choate, and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Jones. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Jones, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Jones's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Jones, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Jones is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED:  February 12, 2026**

                                       _____

                                      **NANCY J. ROSENSTENGEL**
                                      **United States District Judge**

### Notice to Plaintiff

      The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**